UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NICHOLAS PALMIGIANO, ET AL

V. C. A. NO. 74-172 L

BRUCE G. SUNDLUN, ET AL

**THE DEPARTMENT OF CORRECTIONS' RESPONSE TO WILLIAM O'BRIEN'S, JOHN PIERCE'S, MARK S. GEISSER'S, ERIC DAY'S AND WILLIAM THOMAS' MOTION FOR CIVIL CONTEMPT**

Now comes the Rhode Island Department of Corrections and hereby responds to the motion for civil contempt, filed by William O'Brien, John Pierce, Mark S. Geisser, Eric Day and William Thomas.

DEFENDANTS,
By Their Attorney,

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920
Bar No. 3864

CERTIFICATION

The undersigned hereby certifies that on this, the of February, 2007, I mailed a true copy of the within Motion for Civil Contempt to William O'Brien, John Pierce, Mark s. Geisser, Eric Day and William Thomas, all at Medium Security, P. O. Box 8274, Cranston, R. I. 02920.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PALMIGIANO, ET AL

V. C. A. NO. 74-172 L

BRUCE G. SUNDLUN, ET AL

MEMORANDUM

William O'Brien, John Pierce, Mark S. Geisser, Eric Day and William Thomas, all currently housed at the Medium Security facility (John J. Moran facility), have filed the instant motion for contempt of the **Palmigiano** Settlement Agreement entered on March 18, 1994 by This Honorable Court. The instant Movents urge that "alleged contemnors seek to make renovation by altering and intruding into the 288 cells designated by the existing settlement agreement as single bunked, despite the contemnors have agreed at § III., B, 'they will not assign more than one person to a cell at existing facilities.' " Movents also allege that the Department of Corrections is in violation of § II.,J., which in pertinent part states: "in the event that achieving substantial compliance requires the Defendants to make any capital improvements, alterations, or renovations, they may achieve substantial compliance in the following manner . . . " See P. 2 of Motion.

**DISCUSSION**

**A. THE PALMIGIANO CLASS ACTION LAWSUIT HAS BEEN DISMISSED**

In. 1977, this Court, after an extended trial, declared the entire Rhode Island prison system unconstitutional and entered into an extensive remedial order. See **Palmigiano v. Garrahy**, 433 F. Supp. 956, 986 (D.R.I. 1977). During the subsequent fifteen (15) years, there were a number of modifying orders and adjudications of contempt against the instant

Defendants, and sanctions were imposed. Most of the concerns during that time frame were attributable to overcrowding at the ACI. However, on March 18, 1994, the parties to the **Palmigiano** action executed a final settlement agreement, which was accepted and approved by Chief Judge Lagueux on July 15, 1994. Subsequently, the parties filed a joint motion for determination of compliance, which was heard and granted by Chief Judge Lagueux on December 7, 1994. Finally, on July 10, 1995, Chief Judge Lagueux dismissed the **Palmigiano** lawsuit in its entirety and dissolved any outstanding decrees. Defendants, through the years, however, in keeping with the spirit and intent of **Palmigiano**, have entered into various settlement agreements with counsel of the plaintiff class, all of which concern population levels at the various confinement facilities at the ACI. The instant Movents, nor any other inmates at the Adult Correctional Institutions in Rhode Island, may file a contempt motion in this Court, seeking enforcement of orders that have no effect whatsoever. Even if the **Palmigiano** orders remained in effect today, Movents' motion would still lack merit based upon the arguments articulated below.

**B. SUBSTANTIAL COMPLIANCE**

The instant Movents allege that the Department of Corrections has violated § II., J., of the 1994 Settlement Agreement, which in pertinent part states: "In the event that achieving substantial compliance required the Defendants to make any capital improvements, alterations, or renovations, they may achieve substantial compliance in the following manner: . . . " The Movents' reliance on § II., J is misplaced. Provisions contained in § II.A-II. J of the Settlement Agreement simply provides definitions for various pertinent terms of the Settlement Agreement. Section II., J entitled, "Substantial Compliance," must be read in conjunction with § VIII of the Settlement Agreement, which concerns monitoring and compliance. Subsequent to the parties having entered into the Settlement Agreement in question in 1994, and prior to this Honorable

Court's dismissal of the **Palmigiano** action in 1995, monitors conducted periodic inspections and prepared reports detailing the Department of Corrections' substantial compliance with the provisions of the Settlement Agreement; that the periodic inspections continued until the monitors notified the Department of Corrections and Plaintiffs' Counsel, that the Department was in substantial compliance as defined in § II., J. See § VIII A.-B(1)(2) Settlement Agreement, March 18, 1994. In light of the fact that the **Palmigiano** class action has been dismissed and that the Department of Corrections is no longer subject to monitoring and periodic inspections, the Department of Corrections is not under any obligation to show substantial compliance of the terms of the Settlement Agreement

## C. DOUBLE BUNKING OF MEDIUM SECURITY

Finally, Movents urge that "alleged contemnors seek to make renovations by altering and intruding into the 288 cells designated by the existing Settlement Agreement as single-bunked, despite the contemnors have agreed at § III., B., " 'they will not assign more than one person to a cell in existing facilities.' " In § III., B, it was stipulated that "except as provided in **C under this Section, III,** the Defendants agree that they will not assign more than one person to a cell in existing facilities.[1] . . . ". The instant Movents in their motion have failed to address the provisions of § III., C and (D), which in pertinent part state:

> "C. 1.
> Defendants shall be permitted to double-cell. Some prisoners in HSC (High Security Center), Medium, ISC NO.,(Intake Service Center, North), and ISC SO., (Intake Service Center, South), as detailed in Paragraph D of this Section III, provided that the specific conditions set forth in Paragraph D are met.. . ."

. . . . . . . . . . . . . .

D. The Designated Population Capacities For The Following Respective Housing Areas Shall Not Be Exceeded, Except In The Event Of An Emergency As Set Forth In Paragraph G.

[1] The Department of Corrections, for the purpose of its response stipulates that the John J. Moran Medium Security facility meets the definition as an existing facility under the meaning of the Settlement Agreement dated March 18, 1994.

1. Facility: Medium

| | | |
|---|---|---|
| Capacity: | 288 cells double-bunked | 576 |
| | 288 cells single-bunked | 288 |
| | 24 segregation cells single-bunked | 24 |
| | 4 medical cells | 4 |
| | 6 medical ward | 6 |
| Capacity: | TOTAL | 898 |

> "The double-celling in this facility is conditioned upon the installation of two hundred eighty-eight (288) cells adaptable to double-celling. Such cells shall be divided proportionately among the six (6) regular housing units and double-celling is contingent upon each prisoner being adequately programmed and being allowed ten (10) hours out-of-cell time daily."

Accordingly, the 1994 Settlement Agreement approved by This Honorable Court, in fact, allows double celling of half of the six (6) regular housing units at Medium Security, which involve the double-celling of two hundred eighty-eight (288) cells. The Department has double-celled half of the general population cells contained in each of the six (6) housing units of Medium Security. Such double-celling is divided proportionately among the six (6) regular housing units, in that half of the cells in each of the units are occupied by two inmates. See attached affidavit of Jake Gadsden, Jr., Assistant Director, Institutions/Operations.

Additionally, the 1994 Settlement Agreement between the parties only permits each of the twenty-four (24) segregation cells located in Medium Security to be occupied by a single inmate. However, on February 3, 2003, the Defendants and Counsel for the Plaintiffs executed a Stipulation wherein the parties agreed to modify § III, ¶ D. 1. of the 1994 Settlement Agreement which in pertinent part states: "Accordingly, it is stipulated and agreed that Section III, ¶D. 1 is modified to the extent that the population capacity in the segregation unit at the John J. Moran Medium Security facility shall be forty-eight (48) beds, permitting total double-celling of the

entire module." Said Stipulation was approved by this Honorable Court on February 11, 2003. **See** attached Stipulation. At present, eight (8) of the twenty-four (24) segregation cells located in Medium Security are double-celled, pursuant to the 2003 Stipulation.

CONCLUSION

Accordingly, the arguments proffered by the instant Movents are misplaced. The Department of Corrections in double-celling half of the total general population cells contained in the Medium Security facility is in compliance with the 1994 Settlement Agreement. The Department has complied with the maximum double-celled population levels stipulated by the parties and approved by this Honorable Court and has done so proportionately throughout the housing units existing in Medium Security. Movents' motion for contempt should be denied.

Respectfully submitted,

Michael B. Grant
Deputy Chief Legal Counsel
R. I. Department of Corrections
40 Howard Avenue
Cranston, Rhode Island 02920
Bar No. 3864