CT.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Nicholas Palmigiano, et al., vs. Bruce Sundlun, et al., | : | C.A. No. 74-0172L |
| Thomas R. Ross, et al., vs. Bruce Sundlun, et al., | : | C.A. No. 75-0032L |

Plaintiff/Petitioners :

| | |
|---|---|
| **Christopher Rocheleau** | **Phillip Jackson** |
| **Robert Picard** | **Leonard Harrington** |
| **Christopher Botelho** | **Christopher Marikian** |
| **Mark Halvorsen** | **Daniel Smith** |
| **John LaFond** | **Shawn Wakester** |

**MOTION FOR RELIEF**

Pursuant to the provisions of Civ.P. Rule 60(b), the above named Plaintiff/Petitioners respectfully move this honorable Court to grant relief from the August 1, 2007 amendment to the above entitled case, for the following reasons:

1. The Stipulation violates the P.L.R.A.
2. The Stipulation violates the terms of the Settlement.
3. The Stipulation is a Breach of Contract.
4. Misrepresentation of facts made upon the Court.
5. Conflicting interests of the Attorney of Record.

The following is in support thereof:

'AFFIDAVIT IN SUPPORT OF MOTION FOR'

'RELIEF - BREACH OF CONTRACT'

(28 USC 1746 Affirmation statement is with the certification)

1) - I am a sentenced inmate confined at the John J. Moran Medium One Facility of the A.C.I., and am bringing this motion in good faith and believe that I have bona fide issues. It is not intended to be vexatious or cause delay.

2) - I have never met or heard from the Attorney of record; nor any form of notification that the stipulation was approved on August 1, 2007.

2-A) - With great regret and respect for the Attorney of record, I have lost confidence in his ability to represent my rights and interest due to his no longer practicing law with the National Prison Project (See Also: Issues 1-5 infra.).

3) - There are an additional 24 overhead bunks installed, and in use, in each of the 6 housing units at the John J. Moran Medium One Facility, totaling 144 additional bunks.

4) - Since the increase in population, the John J. Moran Medium One Facility has not made any capital improvements that go to alleviate the demands upon the infrastructure due to the increase in population, but for the addition of benches, phones, and a water fountain.

5) - Since the increase in population, there has been no increase in programming as defined in the agreement, (at page 4 of the P.S.A.).

6) - Since the increase in population, there has been no increase in guard postings or medical personel.

7) - Since 1994, we have less than 10 hours of out-of-cell time with access to recreational activities, (see attached Exhibit F, Wherein the night recreation was curtailed; and 50% of the yard is off-limits in fall thru Spring.

8) - I am locked in for over 10 continuous hours each night in double occupancy cells with less than 80 sq. ft. of usable space. (see Exhibit G.).

9) - Insufficient Showers/Availability: 6 Shwrs for 84 persons per unit.

28 USCS 1746

The undersigned, do hereby certify under the pains and penalties of perjury that the aforesaid affidavit is true and accurate to the best of my knowledge and belief; and

The fore going complaint and motion is respectfully submitted by the undersigned, collectively and individually, without representation of legal counsel.

Mark Halvorsen — Leonard Harrington — Chris Rattelen

Christopher Botelho — Phillip Jackson — Daniel Smith

Christopher Manikian — John LaFond — Shawn Wakester

Robert Picard

**CERTIFICATION OF SERVICE**

I, the undersigned, do hereby certify that I caused a true copy of this complaint and affidavit to Director A.T. Wall, II, at 40 Howard Ave., Cranston, R.I. 02920, by placing it in the DOC Mailbox for delivery for that purpose, on the 27th day of July, 2008.

Leonard Harrington

## Introductory Statement

On July 27, 2007, the defendants (the DOC) moved to permanently amend the above captioned Palmigiano Settlement Agreement (the PSA). On August 1, 2007, this Court approved and ordered that the set population cap agreed upon in the PSA for the John J. Moran facility (Med.I.) be increased by installing an additional 144 overhead bunks into previously existing single occupancy cells. **(Attached as Exhibit *).**

The petitioners respectfully believe that it was made by mistake, inadvertance, and other extraordinary circumstances that justify relief , as follows.

## Issues

**1. THE STIPULATION VIOLATES THE P.L.R.A.**

It is alleged that the stipulation amounts to prospective relief that of which is not provided for under the law and was granted in error, inadvertance, or extra ordinary circumstances.

The August 1, 2007 stipulation to increase the population cap violates the plain language of the Prison Litigation Reform Act, wherein it explicitly excludes "Settlement Agreements" from having to comply with the limitations of prospective relief "if the terms of that agreement are not subject to court enforcement", **18 USCA sub.sec. 3626 (c)(2)(A).**

With the restrictions on overcrowding being the sole surviving term contained within the PSA, but unenforcable by this Court[1], the PSA is excluded from the limitations and terminations of relief under the provisions of the PLRA. When the DOC submitted a proposed stipulation to the plaintiff's attorney of record, that stipulation was nothing more, or less, than a motion for prospective relief. Ipso facto, the plaintiff's attorney was under no legal obligation to acquiesce.

Accordingly, the stipulation had no legal premise for relief for which to be granted upon, and, as such, was made in error, inadvertance, or extraordinary circumstances.

## 2. THE STIPULATION VIOLATES THE TERMS OF THE SETTLEMENT

The stipulation which adds 144 beds to the existing facility violates the plain and unambiguous language of the PSA. This agreement explicitly places restrictions on the population cap with emergency deviations only.

The PSA explicitly mandates that the "Defendants shall be permitted to double-cell some prisoners" at Med.I. (with conditions to Sec. III.D.) which sets the "Maximum population capacit[y]", and that it "shall not be exceeded" (See: Sec. III.C; D. :Exhibit A-5). This does not imply any additional relief for the defendants.

---

**Fn.** 1- The State Mechanism (the JOC) is tasked with maintaining this Court's instant pop. cap (which is presently in compliance). See: Palmigiano v Sundlun, 482 F.Supp.2d 207, 214 (D.R.I. 2007).

Any explicit exceptions for relief are put forth in clear, concise language, but it mandates that "[t]he Defendants shall comply with the population cap." (Sec. III.G. at **Exhibit B**). In furtherance to this mandate, it also provides that "the plaintiffs make no concessions, now or in the future, with respect to inmate housing at the ACI except those expressly provided for in this Settlement Agreement." (Sec. X. at **Exhibit C**).

Any relief available for the defendants is explicitly limited to temporary suspentions, **not permanent amendments**, to the population limits, and only after the Director of the DOC formally "declares a state of emergency". (Sec. III.G.2 at **Exhibit** B).

The permanent amendment to the population cap is by every definition a concession made by the petitioner's attorney of record. Since the Director of the ACI has not declared a formal state of emergency, and the attorney for the prisoner class has ceded said concessions in the form of a permanent amendment (all of which is contrary to, and outside of, the terms to the PSA) the amendment (stipulation) amounts to an active breach of contract. Black's Law Dictionary (8th Ed.) defines an "Active Breach of Contract" as "The negligent performance of a contractual obligation, to the point of acting outside the contract's terms."

The DOC has performed outside of the terms of the original population cap for this facility by moving for and receiving relief of a higher population cap, a relief which was not allowed by said terms.

## 3. THE STIPULATION IS A BREACH OF CONTRACT

It is asserted that the DOC's motion to amend the population cap is a threshold showing of the JOC's ineffectiveness.

In this Court's recent holding, a group of inmate petitioners from Med.I. were denied relief for failing to make a threshold showing that the JOC was ineffective at maintaining population levels within the cap (at that time). **Palmigiano supra.**

Only four months later (July 27, 2007) the DOC moved to increase the population cap at the very same facility where it was alleged by said group of petitioners that the DOC was in contempt of court for non-compliance with the original population cap.

The very fact that the DOC necessitated a motion to increase the cap is a prima facie showing, if not more, that the JOC "fail[ed] to exercise its authority and power to enforce the population cap-acities and restrictions effectively ... plaintiff shall have the right to seek enforcement of the provisions of Sec. III." (Sec. IX.F. **Exhibit D).**

To compound this ineffectiveness even further, which goes to quite possibly a showing of deliberate ineffectiveness on behalf of the JOC, several employees of the DOC (including the Director) are standing members of the JOC (**See: Exhibit E**). After Director Wall is confronted with statistics of impending overcrowding, instead of moving the JOC to exercise its inherant powers, he moves to call upon the attorney of record (Alvin Bronstein), thereby relieving the JOC of the necessity to impliment more immediate, remedial action (**Exhibit E**).

This deliberate move by the Director of the DOC to shift the burden to the attorney of record to solve the JOC's core mission, (the prevention of overcrowding),is beyond a threshold showing of the JOC's failure to effectively use its legislative powers. Calling upon the plaintiff's attorney does not constitute an effective measure because it "defeats the core purpose of the [PSA]". **Rufo v Inmates of Suffolk County Jail**, 502 US 367, 391-392, 112 SCT 748, 116 LED2d 867 (1992).

The core purpose of the PSA, at least for the DOC, was the creation of the JOC to prevent overcrowding and Federal Oversight. MisPlacing the responsibility is tatamount to a repudiation of the contract which creates an "exceptional circumstance" by which the plaintiffs can seek relief under Civ.P. Rule 60(b)(6). **Keeling v Sheet Metal Worker's International Ass'n, Local Union 162**, 796 F2d 276 (9th Cir 1980).

The JOC's inaction and repudiation creates an extraordinary situation when it permits "a party to benefit from a judgement the terms of which it has deliberately disregarded." **Warner v Rossignol**, 513 F2d 678, 682 (1st Cir 1975).

Clearly there's a (threshold) showing of the JOC's ineffectiveness and a deliberate disregard for the terms of the PSA that amounts to a repudiation of the contract, warranting relief.

## 4. MISREPRESENTATION / FRAUD UPON THE COURT

The plan presented to the Court for approval contains unsubstantiated facts and/or were misrepresented to the attorney of record that influenced this Court's order.

The reopening of this case, by the defendants on the very issue that is the crux of the PSA, is a re-visitation of all the other settled issues that were dismissed for compliance in 1994. (See: Sec.II.A&J at **Exhibit** H)(cf. Exhits F & G).

For instance, an affidavit was filed with this Court on February 2, 2007, subscribed and sworn to by the DOC's Assist. Dir. Jake Gadsden, Jr. (See **Exhibit** I). Points 6 and 7 misrepresents the actual numbers by 50%, and point # 9 is untrue (See afidavit by the petitioners on page 2,point #7, supra.). Upon information and belief, similiar affidavits were filed on July 27, 2007, for approval.

All of the other points in this petitioner's affidavit were either not taken into consideration or were misrepresented before this Court. Relief is warranted in the form of a reasonable and fairness hearing so as to substantiate these claims.

## 5. CONFLICTING INTERESTS OF ATTORNEY

The stipulation should be voided because the attorney of record, while representing two distinct groups within a class, compromised the terms pertaining to one group over those of the other, which constitutes a conflict of interest.

The PSA established hard-won population caps for the existing facilities in 1994 so as to prevent overcrowding in each specific facility. (See: Sec. III.D.1., 4., and 5. at **Exhibit A).** These distinctions by facility population caps leaves each set of plaintiffs in their respective facility not similiarly situated in the event of overcrowding in one facility and not overcrowding in the other.

For instance, when the inmates at the ISC were subjected to sleep on the floor, they had cause to petition a complaint whereas those at the MEd.I. had no standing although technically we are all within the same class. Where the attorney of record takes up their cause by shifting the numbers to the Med.I. facility, this then impinges on the earned equity of the agreement for us at Med.I. and is a conflict of interest by the attorney of record.

Clearly there exists a legal conflict of interests as well as an ethical oversight on behave of the attorney of record which warrants relief.

## Conclusion

By and through the aforesaid issues the Plaintiff/Petitioners have shown grounds for relif under Civ.P. Rule 60(b) through mistake, inadvertance, surprise, or excusable neglect; and under subsection (d) through this independant action, and fraud upon the court. In totality, there is extraordinary circumstances justifying relief and shows a breach of contract, and, as such, relief is warranted.

**WHEREFORE**, it is respectfully requested that this honorable court grant the plaintiffs relief from the order entered on August 1, 2007 in the following forms:

1. Rescind the order and issue a new order to remove the 144 over-head bunks within a reasonable time frame; **and**

2. Issue an order to have this facility revert back to the recreation schedule in place at the time of original compliance and dismissal ( which took into account the 10 hours of out-of-cell time with access to recreational activities, and less than 10 hours of continuous lock-in period); **and/or in the alternative**

3. Issue an order upon the Attorney of Record for the Plaintiffs to clarify with this Court "the remaining question of who may enforce the provisions of Section III. of the [PSA]", which this Court raised in this decision: **<u>Palmigiano v Sundlun</u>, 482 FSupp2d 207, 215 (DRI 2007); and**

4. Issue new class action notification order and establish new class representatives; **and/or**

5. Issue a scheduling order for the issues contained herein to be argued and appoint an Interim Counsel for the Plaintiffs pursuant to Civ.P. Rule 23(g)(3), by which to represent us at a Reason/Fairness hearing.

6. Any other relief this Court deems just and proper.

Respectfully submitted,

By all those signed, Affirmed, and Certified at page # 3.