# A D D E N D U M


| Exhibit | Description | Page |
|---|---|---|
| * | Stipulation of August 1, 2007 | 1-4 |
| A | PSA (Palmigiano Settlement Agreement) Sec.III. C. and D. | 5-7 |
| B | PSA Sec.III.G. thru G.2. | 8 |
| C | PSA Sec. X. | 9 |
| D | PSA Sec. IX.F. | 10 |
| E | JOC (Criminal Justice Oversight Committee) Minutes of the June 12, 2007 Meeting (pg.s 1 and 2). | 11-14 |
| F | Recreational Schedule Changes. | 15-18 |
| G | PSA Appendix "A". | 19 |
| H | PSA Sec.II.A. & J. | 20-21 |
| I | Affidavit of Jake Gadsden, Jr. | 22-23 |

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| NICHOLAS A. PALMIGIANO, et al. | : | |
| v. | : | C.A. No. 74-0172L |
| BRUCE G. SUNDLUN, Governor of the State of Rhode Island, and George Vose, in his capacity as Director, Rhode Island Department of Corrections[1] | : | |
| THOMAS R. ROSS, et al. | : | C.A. No. 75-0032L |
| v. | : | |
| BRUCE G. SUNDLUN, Governor of the State of Rhode Island, and George Vose, in his capacity as Director, Rhode Island Department of Corrections | : | |

**STIPULATION**

WHEREAS, the parties entered into a Final Settlement Agreement dated March 18, 1994 and approved by the United States District Court for the District of Rhode Island on July 15, 1994. (Copy is attached);

WHEREAS, there have been recent population increases at the Adult Correctional Institutions;

WHEREAS, Defendants have submitted a plan to Plaintiffs' counsel to increase the capacities in the John J. Moran Medium Security facility by adding an additional overhead bunk in 144 cells;

WHEREAS, Defendants have also submitted a plan to Plaintiffs' counsel to increase the capacity in the High Security Center by adding an additional overhead bunk

---

[1] These were the named Defendants when the case was closed in 1994. Presently, Donald Carcieri is the Governor and A.T. Wall is the Director of the Department of Corrections.

Exhibit * - 1

in 18 cells (12 in C-mod; and 6 in D-mod). The parties further agree to subtract from the population capacity the 8 hospital beds from the 1994 settlement, as they have been converted into a medical office and examination space; therefore the net increase to the population capacity at the High Security Center is actually 10;

WHEREAS, in 2002 the parties entered into a Stipulation to increase the capacity at the Women's facility (known as the Gloria McDonald facility)[2] to 153, and the parties now agree that that number was erroneous and should have been 154.

Now, the parties agree to the following amendments of the Final Settlement Agreement, which was dated March 18, 1994, approved by the Court on July 15, 1994, and subsequently amended in June, 1995, further amended on December 20, 1996, approved by the Court on January 3, 1997; further amended on March 4, 1998, approved by the Court on March 27, 1998; further amended on May 16, 2002, approved by the Court on May 31, 2002; and further amended on February 3, 2003 and approved by the Court on February 11, 2003. (Copies of said Modifications are attached).

The Final Settlement Agreement, dated March 18, 1994, in Section III, ¶ D. 1 provided that the total capacity of the John J. Moran Medium security facility shall be 898. That capacity was further amended by agreement to permit an increase to 922. The Defendants now seek to increase the facility's capacity by 144 bunks. Therefore the total capacity for the John J. Moran Medium Security facility shall be 1066.

The Final Settlement Agreement dated March 18, 1994, in Section III, ¶ D. 5 provided that the total capacity of the High Security Center shall be 156. That total included 8 hospital beds. Now the parties agree that the 8 hospital beds may be reduced

[2] The Gloria McDonald facility was previously known as the Women's Jonathan Arnold facility in the Final Settlement Agreement.



*-2

from the total capacity as that area has been converted into a medical office and examination space. The parties further agree that 18 cells in the High Security Center (12 cells in C-mod., and 6 cells in D-mod) may be increased by installing an additional overhead bunk. Therefore, the total capacity in the High Security Center will now be 166.

The Final Settlement Agreement dated March 18, 1994, in Section III, ¶ D. 3 provided that the total capacity of the Women's facility shall be 125. That capacity was further amended by agreement in on December 20, 1996, approved by the Court on January 3, 1997, so that the population capacity was increased to 145. In the May, 2002 agreement, the parties agreed to increase the population capacity at the Women's facility to 153. The parties now agree that the capacity of 153 as set in the 2002 modification was an error and should have been 154. The parties now so amend the population capacity of the Women's facility to 154.

The Defendants have now verified that the aforementioned increases would not be detrimental to the infrastructure of the facilities and would improve prison management. Plaintiffs' counsel has inspected the facilities and confirmed that the requisite population increases will not impair or infringe upon inmates' rights.



*-3

All other provisions of the Agreement remain in full force and effect.

Dated: July 27 2007

Attorney for the Plaintiffs

Alvin J. Bronstein, Esq.
6618 31st Street, N.W.
Washington, D.C. 20015

Attorneys for the Defendants

Richard B. Woolley, #1452
Assistant Attorney General
150 South Main Street
Providence, RI 02903

Patricia A. Coyne-Fague, #5198
Executive Counsel
RI Department of Corrections
40 Howard Avenue
Cranston, RI 02920

Approved and so Ordered:

Ronald R. Lagueux
Senior United States District Judge

Date: August 1, 2007

*-4

C. 1. Defendants shall be permitted to double-cell some prisoners in HSC, Medium, ISC NO and ISC SO, as detailed in Paragraph D of this Section III, provided that the specific conditions set forth in Paragraph D are met. Units designated as protective custody units in those four facilities may be double-celled.

2. Defendants shall ensure that sound classification practice and principle are followed before deciding to double-cell any particular prisoner.

D. The designated maximum population capacities for the following respective housing areas shall not be exceeded, except in the event of an emergency as set forth in Paragraph G.

| | | | |
|---|---|---|---|
| 1. | Facility: | Medium | |
| | Capacity: | 288 Cells Double Bunked | 576 |
| | | 288 Cells Single Bunked | 288 |
| | | 24 Segregation Cells Single Bunked | 24 |
| | | 4 Medical Cells | 4 |
| | | 6 Medical Ward | 6 |
| | TOTAL: | | 898 |

The double-celling in this facility is conditioned upon the installation of Two Hundred and Eighty-Eight (288) beds to create cells adaptable to double-celling. Such cells shall be divided proportionally among the six (6) regular housing units and double-celling is contingent upon each prisoner being adequately programmed and being allowed ten (10) hours out of cell time daily.



A-5

| | | | |
|---|---|---|---|
| 4. | Facility: | ISC South | |
| | Capacity: | 72 Cells Double Bunked | 144 |
| | | 72 Cells Single Bunked | 72 |
| | | 24 Segregation Cells Single Bunked | 24 |
| | | 8 Medical Cells | 8 |
| | | 10 Bed Medical Ward | 10 |
| | TOTAL: | | 258 |

The population capacities above are contingent upon the following:

a) limiting the use of this facility to confine pretrial detainees and convicted prisoners but only for a maximum of One Hundred and Twenty (120) days after sentencing (except for protective-custody prisoners permanently assigned to ISC). Pretrial detainees shall be separated from convicted prisoners;

b) double-celling only up to Fifty percent (50%) of the cells in each module;

c) each prisoner except those identified in Section III D(4)(d) (as stated below), shall be allowed Six and a Quarter (6.25) hours out of cell time daily;

d) each protective custody prisoner who is sentenced and classified shall be allowed ten (10) hours out of cell time daily;

A-6

e) implementation of upgrade corrections to ventilation system as called for in ISC South Recommendations #1 and #4 (Powitz Report of 3/12/92). If these contingencies are not complied with, all cells must be single occupancy for a total capacity of One Hundred and Sixty-Eight (168) (exclusive of medical beds).

| | | | |
|---|---|---|---|
| 5. | Facility: | ISC North | |
| | Capacity: | 392 Cells Double Bunked | 784 |
| | TOTAL: | | 784 |

The population capacities above are contingent upon the following:

a) limiting the use of this facility to confine pretrial detainees, and convicted prisoners but only for maximum of One Hundred and Twenty (120) days after sentencing (except for protective-custody prisoners permanently assigned to ISC). Pretrial detainees shall be separated from convicted prisoners;

b) each prisoner, except those identified in Section III, D(5)(c) (as stated below), shall be allowed Six and a Quarter (6.25) hours out of cell time daily;

c) each protective custody prisoner who is sentenced and classified shall be allowed ten (10) hours out of cell time daily.

| | | | |
|---|---|---|---|
| 6. | Facility: | HSC | |
| | Capacity: | 48 Cells Double Bunked | 96 |
| | | 24 Cells Single Bunked | 24 |
| | | 24 Segregation Cells Single Bunked | 24 |
| | | 4 Psychiatric Cells | 4 |
| | | 8 Bed Hospital Ward | 8 |
| | TOTAL: | | 156 |

A-7

G. Paragraphs A through E inclusive of Section III shall be enforceable in any federal or state court of competent jurisdiction. The defendants shall comply with the population capacities set forth in Section III of this Settlement Agreement except in the following circumstances:

1. Any provision establishing population capacity or limits may be suspended, even in the absence of an emergency, if the suspension is temporarily necessary because of actions by members of the plaintiff class or if suspensions are sporadic or isolated in nature, provided that the suspension lasts no longer than five (5) consecutive days. Any such suspension, including the reason therefore, shall be reported to Plaintiffs' Counsel as promptly as is reasonably possible following the commencement of the suspension.

2. a) In the event of an emergency that makes substantial compliance with any of the terms of this Settlement Agreement impossible, extraordinarily difficult or unfeasible, it may be necessary to suspend temporarily, even beyond five (5) consecutive days, any provision that establishes population limits of this Settlement Agreement. In such event, the Director of the Rhode Island Department of Corrections shall formally declare a state of emergency, and, as soon as practical but no later than five (5) days after

B-8

X. MISCELLANEOUS PROVISIONS

A. In entering into this Settlement Agreement, the defendants do not admit or concede that any rights of the plaintiffs under the Constitution or under the Decrees, are currently being violated at the ACI. Similarly, the plaintiffs do not make any concessions, now or in the future, with respect to inmate housing at the ACI except those expressly provided for in this Settlement Agreement. In addition, the plaintiffs and defendants are not waiving or relinquishing any rights that they may have under the Decrees unless expressly set forth in this Settlement Agreement.

B. The plaintiffs shall not seek additional relief in connection with this lawsuit except as expressly provided in this Settlement Agreement. This paragraph shall not preclude the plaintiffs from seeking to recover reasonable and necessary attorneys' fees, expenses, and costs incurred with negotiation or future enforcement of the Settlement Agreement.

C. This Settlement Agreement shall not be admissible in evidence in any proceeding or trial other than for the sole and limited purpose of enforcement of this Settlement Agreement. Rules 407 and 408 of the Federal Rules of Evidence are applicable to this Settlement Agreement.

D. The defendants shall notify all staff at the ACI facilities of the terms of the Settlement Agreement.

E. 1. If this Settlement Agreement is approved in its



C-9

3. Plaintiffs waive any attorneys' fees and costs incurred by them for reviewing these quarterly reports, pursuant to Section IX, Paragraph C of this Settlement Agreement. No other fees or costs are waived in this agreement.

D. In the event that the population of any facility in the ACI exceeds the capacity limits of Section III for five (5) consecutive days in a non-emergency situation (Section III, Paragraph G), the Director shall notify plaintiffs' counsel of that fact in writing.

E. If the requirements and conditions set forth above in Section IX, Paragraphs A and B are being fully observed and the State Mechanism exercises its authority and power to enforce the population capacities and restrictions effectively, the provisions of Section III of this Settlement Agreement shall not be enforceable in this Court and plaintiffs agree not to bring any action or proceeding to enforce said provisions.

F. In the event that the State Mechanism is disbanded or discontinued, or loses its authority and power to enforce the aforesaid population capacities and restrictions effectively, or fails to exercise its authority and power to enforce the population capacities and restrictions effectively, the provisions of Paragraph E of this Section shall be null and void and plaintiffs shall have the right to seek enforcement of the provisions of Section III.



D-10

# Criminal Justice Oversight Committee
# Minutes of the June 12, 2007 Meeting

## Chairman's Welcome

A meeting of the Criminal Justice Oversight Committee (CJOC) was held on this date at the RI Department of Administration, One Capitol Hill, Providence, RI. The meeting was called to order by Chairman Jackvony at 8:36 AM.

## Attendance

Bernard A. Jackvony, Esq., Chair
*— Director A.T. Wall, RIDOC
Barbara Hurst, designee for Public Defender John Hardiman
Alan Goulart, designee for Attorney General Patrick Lynch
Colonel Brendan Doherty, RI State Police
Lisa Holley, RI Parole Board
Jake McGuigan, Governor's Office
*— Ellen Alexander, RIDOC
*— Erin Boyar, RIDOC
Richard Ferruccio, President, RI Brotherhood of Correctional Officers
Thomas Mongeau, RI JC
Kathleen Loiselle, RIJC

## Approval of April 10, 2007 Minutes

There being no changes, Alan Goulart made a motion:

**TO ACCEPT THE MINUTES OF THE APRIL 10, 2007 MEETING AS SUBMITTED.**

The motion was seconded by Director Wall and was unanimously passed.

## Population Update

Erin Boyar advised that the general trend is that the prison population is increasing. She commented that from FY 06 to FY 07 there has been a 7% increase which represents the largest increase since the mid 90's. Ms. Boyar noted that population can go up or down but now is approximately 3800 - sometimes going over. She advised that the population had been lower in FY 05. It is not clear why it was lower in FY05 and why DOC now has a very high population that has gradually increased month after month. Ms. Boyar stated that the population reached an all time high average in May with 3821 inmates. The first couple of weeks in June are averaging 3801.

Ms. Boyar explained that the prison population is high because the sentenced population is increasing while the pre-trial population is decreasing. The sentenced population is up

E-11

June

**Conclusions**

Director Wall commented that the RIDOC is in a curious position. The initiatives that are being discussed came about not because of the fiscal crisis, but because of the looming operational and capacity crises. Director Wall noted that money for treatment to prepare greater numbers of prisoners to be able to appear before the Parole Board is not available. He added that there is no question that DOC is beginning FY 08 with a significant fiscal problem to the State of Rhode Island. Director Wall stated that the CJOC is meeting to decide when to move forward. He added that the immediate need is the numbers of inmates being held in the Intake Center until the judicial process moves them out into the prison population. To help with the conditions at the Intake Center, DOC is adding staff, bringing in mattresses, and installing toilets/sinks into the holding cells. Director Wall stated that he recognizes that this is not the best practice, but the reason there are so many inmates in the Intake Center is because there are no beds on the sentenced side. He questioned what can be done about the overcrowding. Director Wall pointed out that the new facility cannot be used in the immediate future and it will take 5 years before additional housing units can be opened. He stated that with current trends, RIDOC will be over the court ordered operational capacity well before 5 years.

Director Wall stated that he had placed a call to Chief Legal Counsel, Alvin J. Bronstein, the attorney who was involved in the Palmigiano agreement. He added that he had forwarded materials to him and asked that Mr. Bronstein come to Rhode Island to review the prison system and make recommendations. Director Wall stated that it seemed prudent to engage Mr. Bronstein because he is so familiar with the Palmigiano legislation. Mr. Bronstein will also receive meeting minutes. Director Wall promised to keep the CJOC advised of how this proceeds.

Barbara Hurst inquired if it was too premature to look into directing inmates to a private prison.

Director Wall responded that other states are dealing with the same issues. For instance Arizona is sending inmates to public and private correctional facilities in Indiana. Director Wall pointed out that the law in Rhode Island is unsettled as to what authority the state of Rhode Island has regarding moving inmates into private correctional facilities.

Ellen Alexander noted that so many offenders are housed for such a short term it makes it impossible to send those inmates out-of-state. She added that it would be costly to bring those inmates from a private facility to Rhode Island for court action.

**Set Next Meeting/Adjourn**

The next meeting was scheduled for Thursday, September 6, 2007 at the Department of Administration, Providence, RI.

E-12

Criminal Justice Oversight Committee
Minutes of the September 13, 2007 Meeting

**Chairman's Welcome**

A meeting of the Criminal Justice Oversight Committee (CJOC) was held on this date at the RI Department of Corrections, 40 Howard Avenue, Cranston, RI. The meeting was called to order by Chairman Jackvony at 8:47 AM. The committee agreed to hold all future meetings at the Department of Corrections.

**Attendance**

Bernard A. Jackvony, Esq., Chair
*— Director A.T. Wall, RIDOC
Presiding Justice Joseph Rodgers, Superior Court
Colonel Brendan Doherty, RISP
Public Defender John Hardiman
*— Lisa Holley, DOC, RI Parole Board
Chris Long, Governor's Policy Office representing Jake McGuigan
*— Erin Boyar, RIDOC
Thomas Mongeau, RIJC
Kathleen Loiselle, RIJC

**Approval of June 12, 2007 Minutes**

There being no changes, Lisa Holley made a motion:

**TO ACCEPT THE MINUTES OF THE JUNE 12, 2007 MEETING AS SUBMITTED.**

The motion was seconded by Judge Rodgers and was unanimously passed.

**Report on Alvin Bronstein's Visit to RI**

Director Wall stated that when the CJOC last met it was with a sense of concern about whether or not action was needed by the committee to reduce the prison population. He added that legislative options were introduced to provide strategic reform that would be consistent with public safety. Director Wall thanked Judge Rodgers, Public Defender Hardiman and Lisa Holley as well as DOC staff for participating in that process. He noted that the legislative package was pending when the CJOC last met. The package included the following components: 1) To standardize the earned time formulas so as not to favor prisoners serving long sentences; 2) realigning the program time. Director Wall stated that the Senate passed the legislative package and passed it along to the House, but it did not pass. This legislative package with the same options will most likely be reintroduced at the next legislative session.

E-13

Sept.

Director Wall went on to say that Alvin Bronstein the attorney from the Palmigiano case recently came to Rhode Island to review the prison system. Director Wall noted that it was Mr. Bronstein who entered into the Palmigiano agreement and he thought it was important that he look at the current prison population. Per the original agreement 50% of the population could be double bunked. DOC sought to increase that figure to double bunking 75% of the population. Director Wall distributed a Providence Journal article in which Mr. Bronstein's visit was summarized. He noted that Mr. Bronstein had positive, complimentary remarks regarding RI's prison system wherein previously he had been a critic. Director Wall noted that because the prison is running so well, Mr. Bronstein is in agreement to increase the capacity to double bunk 75%. The agreement to increase the capacity was entered into on August 1, 2007. At peak periods there has not been enough bed space and committed inmates and they have been housed on the floor of the Intake Center sometimes up to 60 inmates per night. The original agreement contains language that the DOC cannot hold inmates in areas that are not designated as bed space. In terms of expansion of bed space, Director Wall noted that this will allow the DOC to move inmates out of the Intake Center freeing up space and not having inmates sleep on mattresses any longer. Director Wall noted that DOC gained 146 beds at Medium Moran where most inmates are housed and 10 beds at the High Security Center. He advised that use of High Security has changed over time, whereas now inmates housed in High Security are not just those classified as Maximum Security. This gives the DOC more flexibility in housing. Director Wall stated that DOC will be opening a specialized unit for mentally ill inmates in High Security and he acknowledged that 17 year olds are also housed at High Security. Additionally, DOC staff found more beds at Maximum Security and at the women's prison.

Director Wall, Mr. Bronstein and the Governor met to discuss this new agreement which represents a short-term fix intended to give the state some breathing room. Both Director Wall and Mr. Bronstein advised the Governor that the legislation should be re-introduced at the next session and Mr. Bronstein indicated he will be watching to see what happens with the legislation. Director Wall noted that the agreement will help Rhode Island now but not in the long term. He added that if legislation is not passed, the work of the CJOC will become very important.

Colonel Doherty inquired if the 17 year olds currently housed in High Security cohabitate with the general population. He also asked if the 17 years old were in the yard with High Security inmates.

Director Wall responded that they are combined in a small protective custody module in a pod within a module arrangement. He noted that sometimes 17 year olds are in the yard with High Security inmates but with additional staff to manage them.

Judge Rodgers inquired how many 17 year olds were incarcerated with High Security inmates.

Erin Boyar responded that currently there are 8 juveniles under the age of 18 in High Security.

 E-14

# New Recreation Schedule "Trial Basis"

In order to afford more outdoor recreation time:
Effective Monday, July 26th, 2004

The following changes have been made to the 3rd & 4th Recreation Periods

Actually 3:45 in practice →

**3:30 PM:** Count clears: Inmates will be given a (5) **five-minute movement.** By the end of the (5) **five-minute movement** inmates must have their cell doors secured. Inmates will be allowed all day-room privileges at this time to include showers.

When the Mod is called for evening meal, only those inmates who are in their cells will be allowed to exit their cells for the evening meal. **Upon returning from chow inmates will be limited to a one-way movement back into their cells, this is not a cross-over movement.**

Actually 4:40 in practice →

**4:50 PM:** **All inmates participating in day-room recreation will be required to return to their cells.**

**6:00 PM:** **"Third REC Period"**, there will be a (5) **five-minute movement** for the Mod scheduled for the gym. Inmates must choose between gym recreation or cells. Upon completion of the gym movement the yard will open for the two Mods schedule for yard recreation. Inmates must choose between yard recreation or cells. The three remaining Mods will be limited to day-room recreation only.

**7:00 PM:** **The Gym and Yard will close** and all inmates on Outdoor recreation will return to their Mods and will be limited to a **(10) ten minute-movement.** By the end of the **(10) minute-movement** all inmates must have their cell doors secured.

**7:10 PM:** **"Fourth REC Period" (5) five-minute movement for the Mod scheduled for the gym,** inmates must choose between gym recreation or cells. By the end of the movement all inmates must have their cell doors secured.

**7:15 PM:** Upon completion of the gym movement **the yard will open for the two Mods schedule for yard recreation.** Inmates must choose between yard recreation or cells. The three remaining Mods will be limited to day-room recreation only.

**8:00 PM:** The Mods on **INDOOR** Recreation will be afforded a **(5) minute-crossover movement.** By the end of the **(5) minute-crossover** all inmates must have their cell doors secured.

**8:15 PM:** **The Gym and Yard will close** and all inmates on Outdoor recreation will return to their Mods and will be limited to a **(10) ten minute-movement.** By the end of the **(10) minute-movement** all inmates must have their cell doors secured.

**8:45 PM:** **Final Movement for all Mods, (10) minute movement** all inmates must return to their cells for Count, all inmates must secure their cell doors.

**9:00 PM:** **Formal Count** taken at this time.

### Showers:

Forced to Dress in the dayroom or Forfiet Recreation →

**All Inmates wishing to participate in day-room recreation following a shower, must bring all items with them. They will not be allowed to return to their cells.**

### Weekends:

**Those Mods scheduled for the gym, will be afforded day-room recreation.**

F-16

| MEDIUM SECURITY | | VISITS | | | RECREATION PERIODS | | | | | | | | | | | | NO GYM FOR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DAY | DATE | 1:10 - 2:45pm | 3:50 - 5:45pm | 6:00 8:30 PM | 1st | | | 2nd | | | 3rd | | | 4th | | | |
| SUN | 05-Sep | X | E/DL | F/AR | A | B | C | D | E | F | a | b | C | d | e | F | ABCDEF |
| MON | 06-Sep | B/AL | DR/C | E/DL-K | D | E | F | A | B | C | D | e | f | A | b | c | CF |
| TUE | 07-Sep | F/AR | B/AL | DR/C-K | A | B | C | D | E | F | a | B | c | d | E | f | AD |
| WED | 08-Sep | E/DL | F/AR | B/AL-K | D | E | F | A | B | C | d | e | F | a | b | C | BE |
| THU | 09-Sep | DR/C | E/DL | F/AR | A | B | C | D | E | F | A | b | c | D | e | f | CF |
| FRI | 10-Sep | B/AL | DR/C | E/DL-K | D | E | F | A | B | C | d | E | f | a | B | c | AD |
| SAT | 11-Sep | F/AR | B/AL | DR/C-K | A | B | C | D | E | F | a | b | C | d | e | F | ABCDEF |
| K - Indicates 6:15pm Visits Also Scheduled for Kitchen Workers | | | | | | | | | | | | | | | | | |
| SUN | 12-Sep | X | F/AR | B/AL | D | E | F | A | B | C | D | e | f | A | b | c | ABCDEF |
| MON | 13-Sep | DR/C | E/DL | F/AR-K | A | B | C | D | E | F | a | B | c | d | E | f | AD |
| TUE | 14-Sep | B/AL | DR/C | E/DL-K | D | E | F | A | B | C | d | e | F | a | b | C | BE |
| WED | 15-Sep | F/AR | B/AL | DR/C-K | A | B | C | D | E | F | A | b | c | D | e | f | CF |
| THU | 16-Sep | E/DL | F/AR | B/AL-K | D | E | F | A | B | C | d | E | f | a | B | c | AD |
| FRI | 17-Sep | DR/C | E/DL | F/AR | A | B | C | D | E | F | a | b | C | d | e | F | BE |
| SAT | 18-Sep | B/AL | DR/C | E/DL-K | D | E | F | A | B | C | D | e | f | A | b | c | ABCDEF |
| SUN | 19-Sep | X | B/AL | DR/C | A | B | C | D | E | F | a | B | c | d | E | f | ABCDEF |
| MON | 20-Sep | E/DL | F/AR | B/AL-K | D | E | F | A | B | C | d | e | F | a | b | C | BE |
| TUE | 21-Sep | DR/C | E/DL | F/AR | A | B | C | D | E | F | A | b | c | D | e | f | CF |
| WED | 22-Sep | B/AL | DR/C | E/DL-K | D | E | F | A | B | C | d | E | f | a | B | c | AD |
| THU | 23-Sep | F/AR | B/AL | DR/C-K | A | B | C | D | E | F | a | b | C | d | e | F | BE |
| FRI | 24-Sep | E/DL | F/AR | B/AL-K | D | E | F | A | B | C | D | e | f | A | b | c | CF |
| SAT | 25-Sep | DR/C | E/DL | F/AR-K | A | B | C | D | E | F | a | B | c | d | E | f | ABCDEF |
| Larger Bold Letters Indicate Mod to Use Gym During Specified Rec. Period. | | | | | | | | | | | | | | | | | |
| SUN | 26-Sep | X | DR/C | E/DL | D | E | F | A | B | C | d | e | F | a | b | C | ABCDEF |
| MON | 27-Sep | F/AR | B/AL | DR/C-K | A | B | C | D | E | F | A | b | c | D | e | f | CF |
| TUE | 28-Sep | E/DL | F/AR | B/AL-K | D | E | F | A | B | C | d | E | f | a | B | c | AD |
| WED | 29-Sep | DR/C | E/DL | F/AR | A | B | C | D | E | F | a | b | C | d | e | F | BE |
| THU | 30-Sep | B/AL | DR/C | E/DL-K | D | E | F | A | B | C | D | e | f | A | b | c | CF |
| FRI | 01-Oct | F/AR | B/AL | DR/C-K | A | B | C | D | E | F | a | B | c | d | E | f | AD |
| SAT | 02-Oct | E/DL | F/AR | B/AL-K | D | E | F | A | B | C | d | e | F | a | b | C | ABCDEF |
| SUN | 03-Oct | X | E/DL | F/AR | A | B | C | D | E | F | A | b | c | D | e | f | ABCDEF |
| MON | 04-Oct | B/AL | DR/C | E/DL-K | D | E | F | A | B | C | d | E | f | a | B | c | AD |
| TUE | 05-Oct | F/AR | B/AL | DR/C-K | A | B | C | D | E | F | a | b | C | d | e | F | BE |
| WED | 06-Oct | E/DL | F/AR | B/AL-K | D | E | F | A | B | C | D | e | f | A | b | c | CF |
| THU | 07-Oct | DR/C | E/DL | F/AR | A | B | C | D | E | F | a | B | c | d | E | f | AD |
| FRI | 08-Oct | B/AL | DR/C | E/DL-K | D | E | F | A | B | C | d | e | F | a | b | C | BE |
| SAT | 09-Oct | F/AR | B/AL | DR/C-K | A | B | C | D | E | F | A | b | c | D | e | f | ABCDEF |
| | | | | | | | | | | | | | | | | | |
| SUN | 10-Oct | X | F/AR | B/AL | D | E | F | A | B | C | d | E | f | a | B | c | ABCDEF |
| MON | 11-Oct | DR/C | E/DL | F/AR-K | A | B | C | D | E | F | a | b | C | d | e | F | BE |
| TUE | 12-Oct | B/AL | DR/C | E/DL-K | D | E | F | A | B | C | D | e | f | A | b | c | CF |
| WED | 13-Oct | F/AR | B/AL | DR/C-K | A | B | C | D | E | F | a | B | c | d | E | f | AD |
| THU | 14-Oct | E/DL | F/AR | B/AL-K | D | E | F | A | B | C | d | e | F | a | b | C | BE |
| FRI | 15-Oct | DR/C | E/DL | F/AR | A | B | C | D | E | F | A | b | c | D | e | f | CF |
| SAT | 16-Oct | B/AL | DR/C | E/DL-K | D | E | F | A | B | C | d | E | f | a | B | c | ABCDEF |

There will be Daily 10-Minute Movements at approximately 9:30 am and 1:30 pm.

Inmates May Leave the Gym During these Movements, but CANNOT Return.

Cut Off Times for Visitors to enter are 2:00pm 4:30pm 7:45pm

SPECTRUM Has Reading Library Tuesday Nights On Their Outside Rec. Period

All Industry Workers Have Reading Library On Thursday Nights On Their Mod's Outside Rec. Period

F-17

| MEDIUM SECURITY | | VISITS | | | RECREATION PERIODS | | | | NO GYM FOR |
|---|---|---|---|---|---|---|---|---|---|
| | | 1:10 - | 3:50 - | 6:00 | | | | | |
| DAY | DATE | 2:45pm | 5:45pm | 8:30 PM | 1st | 2nd | 3rd | 4th | |
| SUN | 25-Jul | X | B/AL | DR/C | A B C | D E F | a b C | d e F | ABCDEF |
| MON | 26-Jul | E/DL | F/AR | B/AL-K | D E F | A B C | D e f | A b c | CF |
| TUE | 27-Jul | DR/C | E/DL | F/AR | A B C | D E F | a B c | d E f | AD |
| WED | 28-Jul | B/AL | DR/C | E/DL-K | D E F | A B C | d e F | a b C | BE |
| THU | 29-Jul | F/AR | B/AL | DR/C-K | A B C | D E F | A b c | D e f | CF |
| FRI | 30-Jul | E/DL | F/AR | B/AL-K | D E F | A B C | d E f | a B c | AD |
| SAT | 31-Jul | DR/C | E/DL | F/AR-K | A B C | D E F | a b C | d e F | ABCDEF |
| K - Indicates 6:15pm Visits Also Scheduled for Kitchen Workers | | | | | | | | | |
| SUN | 01-Aug | X | DR/C | E/DL | D E F | A B C | D e f | A b c | ABCDEF |
| MON | 02-Aug | F/AR | B/AL | DR/C-K | A B C | D E F | a B c | d E f | AD |
| TUE | 03-Aug | E/DL | F/AR | B/AL-K | D E F | A B C | d e F | a b C | BE |
| WED | 04-Aug | DR/C | E/DL | F/AR | A B C | D E F | A b c | D e f | CF |
| THU | 05-Aug | B/AL | DR/C | E/DL-K | D E F | A B C | d E f | a B c | AD |
| FRI | 06-Aug | F/AR | B/AL | DR/C-K | A B C | D E F | a b C | d e F | BE |
| SAT | 07-Aug | E/DL | F/AR | B/AL-K | D E F | A B C | D e f | A b c | ABCDEF |
| SUN | 08-Aug | X | E/DL | F/AR | A B C | D E F | a B c | d E f | ABCDEF |
| MON | 09-Aug | B/AL | DR/C | E/DL-K | D E F | A B C | d e F | a b C | BE |
| TUE | 10-Aug | F/AR | B/AL | DR/C-K | A B C | D E F | A b c | D e f | CF |
| WED | 11-Aug | E/DL | F/AR | B/AL-K | D E F | A B C | d E f | a B c | AD |
| THU | 12-Aug | DR/C | E/DL | F/AR | A B C | D E F | a b C | d e F | BE |
| FRI | 13-Aug | B/AL | DR/C | E/DL-K | D E F | A B C | D e f | A b c | CF |
| SAT | 14-Aug | F/AR | B/AL | DR/C-K | A B C | D E F | a B c | d E f | ABCDEF |
| Larger Bold Letters Indicate Mod to Use Gym During Specified Rec. Period. | | | | | | | | | |
| SUN | 15-Aug | X | F/AR | B/AL | D E F | A B C | d e F | a b C | ABCDEF |
| MON | 16-Aug | DR/C | E/DL | F/AR-K | A B C | D E F | A b c | D e f | CF |
| TUE | 17-Aug | B/AL | DR/C | E/DL-K | D E F | A B C | d E f | a B c | AD |
| WED | 18-Aug | F/AR | B/AL | DR/C-K | A B C | D E F | a b C | d e F | BE |
| THU | 19-Aug | E/DL | F/AR | B/AL-K | D E F | A B C | D e f | A b c | CF |
| FRI | 20-Aug | DR/C | E/DL | F/AR | A B C | D E F | a B c | d E f | AD |
| SAT | 21-Aug | B/AL | DR/C | E/DL-K | D E F | A B C | d e F | a b C | ABCDEF |
| SUN | 22-Aug | X | B/AL | DR/C | A B C | D E F | A b c | D e f | ABCDEF |
| MON | 23-Aug | E/DL | F/AR | B/AL-K | D E F | A B C | d E f | a B c | AD |
| TUE | 24-Aug | DR/C | E/DL | F/AR | A B C | D E F | a b C | d e F | BE |
| WED | 25-Aug | B/AL | DR/C | E/DL-K | D E F | A B C | D e f | A b c | CF |
| THU | 26-Aug | F/AR | B/AL | DR/C-K | A B C | D E F | a B c | d E f | AD |
| FRI | 27-Aug | E/DL | F/AR | B/AL-K | D E F | A B C | d e F | a b C | BE |
| SAT | 28-Aug | DR/C | E/DL | F/AR-K | A B C | D E F | A b c | D e f | ABCDEF |
| | | | | | | | | | |
| SUN | 29-Aug | X | DR/C | E/DL | D E F | A B C | d E f | a B c | ABCDEF |
| MON | 30-Aug | F/AR | B/AL | DR/C-K | A B C | D E F | a b C | d e F | BE |
| TUE | 31-Aug | E/DL | F/AR | B/AL-K | D E F | A B C | D e f | A b c | CF |
| WED | 01-Sep | DR/C | E/DL | F/AR | A B C | D E F | a B c | d E f | AD |
| THU | 02-Sep | B/AL | DR/C | E/DL-K | D E F | A B C | d e F | a b C | BE |
| FRI | 03-Sep | F/AR | B/AL | DR/C-K | A B C | D E F | A b c | D e f | CF |
| SAT | 04-Sep | E/DL | F/AR | B/AL-K | D E F | A B C | d E f | a B c | ABCDEF |

There will be Daily 10-Minute Movements at approximately 9:30 am and 1:30 pm.

Inmates May Leave the Gym During these Movements, but CANNOT Return.

Cut Off Times for Visitors to enter are 2:00pm 4:30pm 7:45pm

SPECTRUM Has Reading Library Tuesday Nights On Their Outside Rec. Period

All Industry Workers Have Reading Library On Thursday Nights On Their Mod's Outside Rec. Period

F-18

3-4128 Revised August 1991. Single cells are required for inmates assigned to maximum and close custody. All cells in which inmates are confined conform with the following requirements:

1. There must be 35 square feet of unencumbered space for the single cell occupant.
2. When confinement exceeds 10 hours per day, there is at least 80 square feet of total floor space for the occupant.
3. "Unencumbered space" is usable space that is not encumbered by furnishing or fixtures. At least one dimension of the unencumbered space is no less than seven feet. In determining unencumbered space, all fixtures must be in operational position and must provide the following minimum areas per person: bed, plumbing fixtures, desk, and locker.
4. Supervision is consistent with standard 3-4170.

COMMENT: This standard encourages design flexibility and creativity by relating cell size to the amount of unencumbered or free space provided.

3-4128-1 Added August 1991. Single cells/rooms and multiple occupancy cells/rooms may be used for housing inmates in medium/minimum custody when the classification system, cell/room size, and level of supervision meet the following requirements:

1.

| Number of Occupants | Amount of Unencumbered Space* |
|---|---|
| 1 | 35 square feet per occupant |
| 2–50 | 25 square feet** |

*"Unencumbered space" is usable space that is not encumbered by furnishings or fixtures. At least one dimension of the unencumbered space is no less than seven feet. In determining unencumbered space in the cell or room, the total square footage is obtained and the square footage of fixtures and equipment is subtracted. All fixtures and equipment must be in operational position and must provide the following minimums per person: bed, plumbing fixtures (if inside the cell/room), desk, locker, and chair or stool.

**Sleeping area partitions are required if more than four people are housed in one sleeping area.

2. When confinement exceeds 10 hours per day, there is at least 80 square feet of total floor space per occupant.
3. Housing is in compliance with ACA standards 3-4132, 3-4133, 3-4134, 3-4137, 3-4144, and 3-4282.
4. Medium security inmates housed in multiple occupancy cells/rooms require direct supervision. (See glossary for definition of direct supervision.)

A classification system is used to divide the occupants into groups that reduce the probability of assault and disruptive behavior. At a minimum, the classification system evaluates the following:

- mental and emotional stability
- escape history



G-19

The parties believe that these recent initiatives by the defendants and other state officials are consistent with important principles of federalism, create the potential for establishing the ACI as a constitutional prison system, and may result in completely restoring authority over a constitutional state prison system where it belongs, in the hands of responsible state officials.

The defendants have recently discontinued the use of the Special Needs Facility (also known as Old Medium Security) as a secure facility, and may plan to convert that facility into a reintegration facility, a facility designed to house a variety of prisoners and programs within the defendants' framework of intermediate sanctions.

Because the parties are interested in resolving plaintiffs' concerns about areas of possible non-compliance, in addressing proposals that defendants might have for modification of existing orders, and in addressing the ultimate termination of compliance monitoring and the Court's active supervision of the remedial orders in this cause, the parties hereby enter into this Settlement Agreement on this 18th day of March, 1994.

## II. DEFINITIONS

A. "Adequate Programming" shall mean the level of programming being provided at the time of the notification of substantial compliance by the Monitors as provided for hereafter.



H-20

G. "Newly Constructed Facility" shall mean any facility housing members of the plaintiffs' class that is completed after the effective date of this Settlement Agreement and shall include additions to an existing facility.

H. "Plaintiffs" shall mean prisoners housed at the Adult Correctional Institutions.

I. "Plaintiffs' Counsel" shall mean Alvin Bronstein, Mark Lopez and other lawyers employed by the National Prison Project of the American Civil Liberties Union Foundation, 1875 Connecticut Avenuue, NW, Ste. 410, Washington, D.C. 20009.

J. "Substantial Compliance" shall mean that the defendants have generally fulfilled the remedial provisions of the August 10, 1977 Order, as amended, and all subsequent orders of this Court, governing the delivery of medical, dental and mental health services; environmental health and safety conditions and practices; and, management, security and inmate activity issues. In the event that achieving substantial compliance requires the defendants to make any capital improvements, alterations, or renovations, they may achieve substantial compliance in the following manner. The defendants shall prepare and submit to plaintiffs' counsel a written document which sets forth in detail a plan for the improvement, alteration, or renovation, the amount of funds required, the source of those funds, and a specific timetable for completing the work. If counsel for plaintiffs approve of the foregoing plans in writing, the defendants shall be entitled to a finding of substantial



H-21

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NICHOLAS PALMIGIANO, ET AL

V. C. A. NO. 74-172 L

BRUCE G. SUNDLUN, ET AL

# AFFIDAVIT

I, Jake Gadsden, Jr., do hereby depose and say:

1. From 1997 to 2001, I was employed as the Warden of the Medium Security, Rhode Island Department of Corrections.
2. Since 2001 I have served the Rhode Island Department of Corrections as Assistant Director, Institutions/Operations.
3. My responsibilities as Assistant Director of Institutions/Operations include being responsible for the management and administration of all aspects of the State's correctional institutions/operations and maintenance of food services, including development and formulation of institutional policies and procedures within the Department.
4. As Assistant Director, I work directly under the administrative direction of the Department of Corrections Director, Ashbel T. Wall, II.
5. The Rhode Island Department of Corrections is comprised of seven (7) separate secured facilities, including Minimum Security, Medium Security (consisting of two (2) separate secured facilities), Maximum Security, High Security Center, Intake Service Center, and Women's Division. The wardens of these secured facilities report to me directly.

I-22

* 6. The John J. Moran Medium Security facility maintains two hundred eighty-eight (288) general population cells, forty-eight (48) cells existing in each of six (6) housing units comprising said facility.

*Should be 96 → or ← (12)*

* 7. At present, half of the forty-eight (48) cells in each of the six (6) housing units are double-celled.

*Should be 96 → or ← (12)*

8. Accordingly, in each of the six (6) housing units, there are twenty-four (24) double-bunked cells.

* 9. All inmates who are double-bunked in Medium Security are allowed at least ten (10) hours of out-of-cell time daily.

*false; Less than 8*

10. Medium Security also possesses twenty-four (24) segregation cells. Eight of these cells are double-bunked.

Jake Gadsden Jr.
Jake Gadsden, Jr.

Subscribed and sworn to, before me, in Cranston, this 14th day of February, 2007.

Marcia Ann Cruz
Notary Public
My Commission expires 09-09-09.

I-23